Per Curiam.
 

 Plaintiff Farmers Insurance Exchange (hereinafter plaintiff) brought the instant action seeking a declaration that defendant is responsible for paying for nursing services provided to one of its special education students, Benjamin Smith, during school hours and during Benjamin’s transportation to and from school. Plaintiff also sought reimbursement of money that it had paid for such nursing services since Benjamin had returned to school in February 1994, after the July 1993 accident that had left him disabled. The Michigan Catastrophic Claims Association intervened as a plaintiff.
 
 [1]
 
 The parties agreed to waive their right to a jury and to submit the case to
 
 *239
 
 the trial court on a stipulated set of facts and evidentiary record. Defendant appeals as of right from the circuit court’s order entering judgment in favor of plaintiffs. We affirm.
 

 Benjamin Smith was iryured in a bicycle-automobile accident in July 1993. As a result of the accident, Benjamin is quadriplegic, has a tracheostomy, and requires a ventilator to breathe. He requires nursing care twenty-four hours a day and must be monitored continuously. Benjamin’s nurse must continuously monitor Benjamin’s alignment in his wheelchair and the settings and operation of his ventilator, must periodically give him antibiotics and spasm medication, must feed him, must catheterize him every few hours, and must suction phlegm from his tracheostomy as needed, usually three to five times a day. During the suctioning of phlegm, the ventilator must be detached, an “Ambu bag” must be placed on the tracheostomy and manually squeezed to enable Benjamin to breathe, and a suction catheter must be carefully inserted through his tracheostomy into his throat. These services take place during school hours and while Benjamin is being transported to and from school. The services need not be performed by a medical doctor. After his accident, Benjamin returned to defendant’s school as a special education student. Benjamin is a child with a disability within the meaning of the Individuals With Disabilities Education Act (idea), 20 USC 1400
 
 et seq.
 
 See 20 USC 1401(a)(1), before its amendment by Pub L 105-17, tit VI, § 1602.
 

 Plaintiff is Benjamin’s no-fault insurance carrier and has paid all expenses for his nursing services since the time of his accident at the rate of $32 an
 
 *240
 
 hour for school-time nursing services. In December 1994, plaintiff requested that defendant pay for Benjamin’s nursing services during school hours and during the time Benjamin was transported to and from school, asserting that the idea required defendant to provide the nursing services. The idea authorizes federal financial assistance to states that fulfill certain conditions regarding the education of disabled children. See 20 USC 1412;
 
 Jenkins v Carney-Nadeau Public School,
 
 201 Mich App 142, 144; 505 NW2d 893 (1993). To qualify for the federal funds, a state must have in effect “a policy that assures all children with disabilities the right to a free appropriate public education.” 20 USC 1412(1);
 
 Jenkins, supra.
 
 A “free appropriate education” is defined in 20 USC 1401(a)(16), before its amendment by Pub L 105-17, as “special education and related services.” “Related services” are defined in 20 USC 1401(a)(17), before its amendment by Pub L 105-17. Plaintiff requested that defendant pay for the nursing services on the basis that the nursing services were “related services.” After defendant refused the request, plaintiff filed the instant action.
 

 Defendant argues that the circuit court erred in concluding that it had jurisdiction over plaintiff’s claim because plaintiff failed to exhaust the administrative remedies provided by the idea before bringing this suit to determine whether the idea requires the school district to pay for the nursing services required by Benjamin during school hours and during his transportation to and from school. We disagree. Whether the circuit court had subject-matter jurisdiction is a question of law that we review de novo.
 
 *241
 

 Specht v Citizens Ins Co of America,
 
 234 Mich App 292, 294; 593 NW2d 670 (1999).
 

 The circuit court correctly determined that it had subject-matter jurisdiction over plaintiffs claims. Circuit courts are courts of general jurisdiction, and have original jurisdiction over all civil claims and remedies “except where exclusive jurisdiction is given by the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.” MCL 600.605; MSA 27A.605;
 
 Manning v Amerman,
 
 229 Mich App 608, 610; 582 NW2d 539 (1998). Contrary to defendant’s argument, plaintiff’s claims were not brought under the IDEA, but were brought under subsection 3109(1) of the no-fault act, MCL 500.3109(1); MSA 24.13109(1), which provides that “[b]enefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury.” The purpose of subsection 3109(1) is “to reduce the basic cost of insurance by requiring a setoff of those government benefits that duplicate no-fault benefits and coordinating those benefits a victim may receive.”
 
 Sibley v DAIIE,
 
 431 Mich 164, 168; 427 NW2d 528 (1988). Government benefits must be offset against no-fault benefits under § 3109 if they serve the same purpose as the no-fault benefits and are provided or required to be provided as a result of the same accident.
 
 Id.
 
 at 169.
 

 Here, the parties do not dispute that benefits available under the idea serve the same purpose as the no-fault benefits provided to Benjamin during school hours. Thus, the remaining question is whether the
 
 *242
 
 benefits are “required to be provided” by the school district pursuant to the idea. The “required to be provided” clause of subsection 3109(1) means that the injured person is obliged to use reasonable efforts to obtain payments that are available from the government.
 
 Perez v State Farm Mut Automobile Ins Co,
 
 418 Mich 634, 645, 648; 344 NW2d 773 (1984) (LEVIN, J.). In other words, where government benefits are available, but the injured person does not exercise reasonable efforts to obtain them, an insurance company is still entitled to the setoff provided by subsection 3109(1).
 
 Id.
 
 at 646. “Where workers’ compensation benefits are available, but the injured worker does not exercise reasonable efforts to obtain them, the particular purpose of § 3109(1) to contain the cost of no-fault insurance prevails and the workers’ compensation benefits are required to be subtracted from the no-fault benefits.”
 
 Id.
 
 at 648.
 

 Defendant contends that plaintiff cannot show that the benefits are required to be provided by the school district under the idea because Benjamin’s eligibility under the idea for the nursing services can be determined only through administrative procedures provided by the idea, and plaintiff has no standing to commence such procedures. The idea requires that an individual education program (iep) be developed for each child with a disability, which enumerates the “related services” the child requires to benefit from the prescribed special education program.
 
 [2]
 
 34 CFR
 
 *243
 
 300.342;
 
 Allstate Ins Co v Bethlehem, Area School Dist,
 
 678 F Supp 1132, 1134 (ED Pa, 1987). In addition, states are required to provide an administrative appeals procedure for the review of decisions regarding the “identification, evaluation, or educational placement, or the provision of a free appropriate public education.” 20 USC 1415(b)(1)(E);
 
 Jenkins, supra
 
 at 144. Before administrative decisions may be appealed to a state or federal court, administrative remedies must be exhausted. 20 USC 1415(e)(2);
 
 Jenkins, supra.
 

 Here, the parties agree that plaintiff did not have standing to challenge defendant’s refusal to pay for Benjamin’s care in the administrative forum because only Benjamin’s parents or guardians and defendant had standing to instigate administrative proceedings. 20 USC 1415(b)(1); 34 CFR 300.506. It is undisputed that neither the school district nor Benjamin’s parents have requested that the nursing services be included in Benjamin’s iep. However, ■ it is important to note that the present action was not brought by plaintiff to seek to have the nursing services included in Benjamin’s iep. An action to modify Benjamin’s iep can be brought only by Benjamin's parents after having exhausted the administrative remedies provided by the idea. 20 USC 1415. Rather, plaintiff brought the instant action seeking a determination of its rights under subsection 3109(1).
 

 Furthermore, the purpose of the idea’s requirement that administrative remedies be exhausted is to allow the school district to employ its educational expertise in developing a special educational plan and to develop a factual record. See
 
 Moubry v Independent School Dist No 696 (ELY),
 
 951 F Supp 867, 888
 
 *244
 
 (D Minn, 1996). Here, defendant has stipulated that Benjamin requires nursing services during the school day and during transportation to and from school and that, without such services, he cannot benefit from any special education plan. Thus, defendant has stipulated the facts that would have been determined in the IEP process. The only question remaining is the legal question whether the idea requires defendant to pay for the nursing services on the basis of the stipulated facts. It was within the circuit court’s jurisdiction to apply the idea to the undisputed facts to determine plaintiff’s rights under § 3109.
 

 Defendant relies on
 
 Allstate Ins Co, supra,
 
 to support its position that the circuit court did not have jurisdiction to determine whether defendant was responsible for providing the nursing services required by Benjamin during school hours and while traveling to and from school. In
 
 Allstate,
 
 the plaintiff insurance company brought suit in federal district court alleging that the school district was responsible for the cost of nursing services provided to a disabled student during school hours pursuant to the Education for All Handicapped Children Act (eha), 20 USC 1400
 
 et seq.,
 
 which was the predecessor of the IDEA.
 
 Allstate Ins Co, supra
 
 at 1132-1133. The court held that it did not have subject-matter jurisdiction over the plaintiff’s claims because the eha provided administrative procedures to determine whether the school district was responsible for providing the nursing services during school hours and the court could not disregard those procedures.
 
 Id.
 
 at 1136. However, the instant case is distinguishable from
 
 Allstate.
 
 Here, plaintiff did not bring suit under the idea. Rather,
 
 *245
 
 plaintiff brought suit under subsection 3109(1). No similar statute was involved in
 
 Allstate.
 

 Defendant further argues, however, that, even if the circuit court had jurisdiction, it erroneously determined that defendant was required to pay for Benjamin’s nursing services during school hours under the IDEA. We disagree. This issue presents a question of law, which we review de novo.
 
 Lane v KinderCare Learning Centers, Inc,
 
 231 Mich App 689, 695; 588 NW2d 715 (1998).
 

 As already stated, “a free appropriate education” is defined as “special education and related services.” Therefore, if the nursing services required by Benjamin are included within the definition of “related services,” defendant is obligated to provide the nursing services. The idea defines “related services” as
 

 transportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children. [20 USC 1401(a)(17), before its amendment by Pub L 105-17.]
 

 Thus, whether a service is a “related service” depends on (1) whether the service is a “supportive service” that is “required to assist a child with a disability to benefit from special education” and (2) whether the service is excluded from the definition of “related services” as a “medical service” that is not
 
 *246
 
 for diagnostic or evaluation purposes.
 
 Irving Independent School Dist v Tatro,
 
 468 US 883; 104 S Ct 3371; 82 L Ed 2d 664 (1984). Here, the parties agree that the nursing care required by Benjamin’s condition is a “supportive service,” because they have stipulated that, without it, he cannot benefit from a program of special education. Thus, the only question we are asked to resolve is whether the nursing services are excluded from the definition of “related services” as a “medical service” that is for purposes other than diagnosis or evaluation.
 
 Id.
 

 This question was resolved by the United States Supreme Court in
 
 Cedar Rapids Community School Dist v Garret F,
 
 526 US _; 119 S Ct 992; 143 L Ed 2d 154 (1999). In
 
 Cedar Rapids,
 
 the school district brought an action challenging an administrative determination that it was responsible for providing nursing services required by a student, Garret E, during school hours.
 
 Id.,
 
 119 S Ct 997; 143 L Ed 2d 161-163. Like the case presently before us, in
 
 Cedar Rapids,
 
 the student’s condition required catheterization, suctioning of his tracheostomy, and constant monitoring of his ventilator.
 
 Id.,
 
 119 S Ct 995, n 3; 143 L Ed 2d 160, n 3. The
 
 Cedar Rapids
 
 Court held that the idea required the school district to provide Garret with the nursing services he required during school hours.
 
 Id.,
 
 119 S Ct 997; 143 L Ed 2d 161-163. In finding that the required nursing services were not “medical services,” the Court relied heavily on its decision in
 
 Tatro
 
 that the term “medical services” referred only to services that must be performed by a physician and not to school health services.
 
 Id.,
 
 119 S Ct 997-998; 143 L Ed 2d 161-164. The Court then noted that the nursing services required by Garret did not “demand the training,
 
 *247
 
 knowledge, and judgment of a licensed physician.”
 
 [3]
 

 Id.,
 
 119 S Ct 998; 143 L Ed 2d 163. Therefore, because the nursing services required by Garret’s condition were not “medical services,” the Court concluded that the district was responsible for providing the required services during school hours.
 
 Id.
 

 Thus, because defendant does not dispute that Benjamin requires the nursing services to benefit from any special education plan and because the Supreme Court has conclusively determined that the nursing services required by Benjamin are “related services” that the IDEA requires defendant to provide, the trial court correctly determined that the nursing services are benefits that are “required to be provided” by defendant under the idea for the purposes of subsection 3109(1). Therefore, we affirm the trial court’s declaratory judgment that plaintiffs áre entitled to subtract from no-fault benefits otherwise payable as the result of Benjamin’s accident the costs of nursing care required by Benjamin during school hours and during his transportation to and from school. We further affirm the trial court’s determination that plaintiff was entitled to monetary reimbursement from defendant of the amounts plaintiff has paid to provide Benjamin with the required nursing services during school hours and during his transportation to and from school. While we acknowledge that this Court cannot direct defendant to include the nursing services in Benjamin’s iep, nothing in this opinion is meant to suggest that defendant is not obligated to pay for the nursing services at issue now that we have deter
 
 *248
 
 mined that plaintiff is not required to pay for such services pursuant to § 3109.
 

 Affirmed.
 

 [1]
 

 Pursuant to MCL 500.3104; MSA 24.13104, every insurer writing no-fault insurance must be a member of the Michigan Catastrophic Claims Association (mcca). The mcca indemnifies its member insurers for losses in excess of $250,000 paid under personal protection insurance coverage in a single loss occurrence. However, the mcca is not obligated to indemnify its member insurers for amounts the insurers are not obligated to pay under their no-fault policies.
 

 [2]
 

 Michigan has implemented the idea through the mandatory special education act (msea), MCL 380.1701
 
 et seq.-,
 
 MSA 15.41701
 
 et seq.
 
 Pursuant to the msea, regulations have been promulgated controlling the preparation, content, and appeal of ieps. See 1987 AACS, R 340.1725(3); 1980 AACS, R 340.1725a;
 
 Jenkins, supra
 
 at 144.
 

 [3]
 

 In the instant case, the parties stipulated that the services Beryamin requires during school hours need not be performed by a licensed medical doctor.