CHERRY GROWERS, INC v AGRICULTURAL MARKETING AND BAR-
GAINING BOARD

Docket Nos. 216917, 217396, 218400, 218584. Submitted February 1, 2000,
at Lansing. Decided March 3, 2000, at 9:25 A.M. Leave to appeal
sought.

The Agricultural Marketing and Bargaining Board (AMBB) notified
Cherry Growers, Inc. (CGI), that CGI was subject to mandatory bar-
gaining and arbitration pursuant to the provisions of the Agricul-
tural Marketing and Bargaining Act (AMBA), MCL 290.701 et seq.;
MSA 12.94(101) et seq. CGI claimed that it was exempt from arbitra-
tion and that a joint settlement committee (JSC) that the AMBB estab-
lished to arbitrate the dispute lacked jurisdiction over the dispute.
CGI filed a complaint in the Grand Traverse Circuit Court seeking
declaratory and injunctive relief. The JSC rendered a decision, fol-
lowing a hearing that CGI did not attend, that set the minimum
prices to be paid for process apples handled by CGI. The AMBB, inter-
vening defendant Michigan Processing Apple Growers, Inc., a divi-
sion of the Michigan Agricultural Cooperative Marketing Associa-
tion (MACMA), and CGI all sought summary disposition in the circuit
court action. The circuit court, Philip E. Rodgers, Jr., J., found that
it had jurisdiction over the dispute and that CGI was not subject to
mandatory bargaining and arbitration under the AMBA. The court
granted summary disposition in favor of CGI and enjoined the AMBB
from asserting jurisdiction over CGI with regard to the issues
decided by the court. CGI appealed the arbitration award of the JSC
(Docket No. 216917), the MACMA petitioned the Court of Appeals for
enforcement of the arbitration award (Docket No. 217396), the
AMBB appealed the circuit court's grant of summary disposition in
favor of CGI (Docket No. 218400), and the MACMA appealed the cir-
cuit court's grant of summary disposition in favor of CGI (Docket
No. 218584). The appeals and the petition were consolidated.

The Court of Appeals held:

1. The doctrine of primary jurisdiction applies when concurrent
original subject-matter jurisdiction exists between the courts and
an administrative agency. The courts may defer to the agency in

order to promote uniformity, to take advantage of the special powers and expertise the agency may have in dealing with the subject matter, or to prevent any adverse effect on the agency's performance of its regulatory responsibilities resulting from judicial resolution of the issue.

2. The doctrine of primary jurisdiction required that the circuit court defer to the jurisdiction of the AMBB. The administrative agency's expertise in agricultural marketing and bargaining makes the agency the preferable forum for resolution of the issue. The need for consistency and uniformity applies to collective bargaining and labor practices in the agricultural industry. Resolution of disputes regarding the AMBA in the circuit courts could seriously hamper the AMBB's responsibilities for administering the act and achieving the Legislature's purpose in establishing a statewide marketing and bargaining system. The AMBA provides for judicial review by the Court of Appeals, not the circuit courts.

3. The AMBA's definition of an "association" does not require an association to be structured under a one-vote-per-member system, although the act does require such a structure for accreditation of associations under the act. The act requires that an association be engaged in activities on behalf of members, as defined in the act, but does not require that an association's activities be limited to only members.

4. The AMBA's definition of a "member" requires that the producer must have entered into a contract with the association appointing it as the exclusive agent in negotiations with handlers. The act's definition of a "member" does not apply to accredited associations only.

5. CGI does not have exclusive contracts with its members and therefore does not meet the definition of an association under the act. Because CGI does not meet the definition of an association, it is a "handler" under the act. A "handler" is obligated to bargain with the accredited association for the agricultural commodity involved with regard to terms relative to trading of the commodity.

6. The AMBA exempts from the mandatory bargaining process quantities of a commodity contracted by producers with producer owned and controlled processing cooperatives, where they qualify as an association under the act.

The determination of the AMBB and the JSC in Docket No. 216917 must be affirmed on the basis that CGI is subject to mandatory bargaining. The request for an order enforcing the arbitration decision of the AMBB and the JSC in Docket No. 217396 must be granted. The circuit court's order in Docket Nos. 218400 and 218584 must be

reversed on the basis that subject-matter jurisdiction over this matter rested with the AMBB.

1. AGRICULTURE — AGRICULTURAL MARKETING AND BARGAINING ACT.

The Agricultural Marketing and Bargaining Board is charged with administering the Agricultural Marketing and Bargaining Act; the circuit courts have subject-matter jurisdiction over certain matters of statutory construction involving the act; the Court of Appeals is vested with jurisdiction regarding the judicial review of the board's actions (MCL 290.701 *et seq.*; MSA 12.94[101] *et seq.*).

2. COURTS — JURISDICTION — ADMINISTRATIVE AGENCIES — PRIMARY JURISDICTION.

The doctrine of primary jurisdiction applies when concurrent original subject-matter jurisdiction exists between the courts and an administrative agency; no fixed formula determines whether the doctrine applies and each case must be decided on its own facts by determining whether the purposes underlying the doctrine will be furthered by its application to a particular litigation; three major purposes generally govern this analysis: first, a court should consider to what extent an agency's specialized expertise makes it a preferable forum for resolving the issue; second, a court should consider the need for uniformity and consistency in resolving the issue; and third, a court should consider whether judicial resolution of the issue will have an adverse effect on the agency's performance of its regulatory responsibilities.

3. AGRICULTURE — AGRICULTURAL MARKETING AND BARGAINING ACT — WORDS AND PHRASES — ASSOCIATIONS.

The Agricultural Marketing and Bargaining Act requires that an association seeking accreditation under the act be structured under a one-vote-per-member system; the act's definition of an "association" does not require that an association be structured under a one-vote-per-member system or meet the requirements for accreditation under the act; the act requires an association to be engaged in specified activities on behalf of its members but does not require that an association's activities be limited to only members as defined in the act (MCL 290.702[a], 290.707[a]; MSA 12.94[102][a], 12.94[107][a]).

4. AGRICULTURE — AGRICULTURAL MARKETING AND BARGAINING ACT — WORDS AND PHRASES — MEMBERS.

The Agricultural Marketing and Bargaining Act defines a "member" as a producer who has entered into a contract with an association, accredited or unaccredited under the act, appointing the association as its exclusive agent in negotiations with handlers with

respect to the marketing of an agricultural commodity (MCL 290.702[i]; MSA 12.94[102][i]).

5. AGRICULTURE — AGRICULTURAL MARKETING AND BARGAINING ACT — MANDATORY BARGAINING — EXEMPTIONS.

The Agricultural Marketing and Bargaining Act exempts from the act's mandatory bargaining process quantities of a commodity contracted by producers with producer owned and controlled processing cooperatives where they qualify as an association under the act (MCL 290.701 *et seq.*; MSA 12.94[101] *et seq.*).

*Warner Norcross & Judd LLP* (by *William K. Holmes* and *Edward J. Bardelli*), for Cherry Growers, Inc.

*White, Przybylowicz, Schneider & Baird, P.C.* (by *James J. Chiodini* and *James A. White*), for Michigan Processing Apple Growers, Inc., a division of Michigan Agricultural Cooperative Marketing Association, Inc.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Randall Whitworth*, Assistant Attorney General, for the Agricultural Marketing and Bargaining Board.

Before: McDONALD, P.J., and DOCTOROFF and NEFF, JJ.

NEFF, J. In these consolidated cases, all involving the same three parties, we are presented issues of jurisdiction and statutory construction under the Agricultural Marketing and Bargaining Act (hereafter the AMBA or the act), MCL 290.701 *et seq.*; MSA 12.94(101) *et seq.*, to determine whether Cherry Growers, Inc. (CGI), is subject to the mandatory bargaining and arbitration provisions of the act. We hold that jurisdiction in this matter rests with the Agricultural Marketing

and Bargaining Board[1] (AMBB) rather than the circuit court. We affirm the AMBB's determination that CGI is subject to mandatory bargaining and arbitration under the act as a "handler" of agricultural commodity. We, therefore, grant the complaint of the Michigan Agricultural Cooperative Marketing Association (MACMA)[2] for enforcement of the arbitration decision.

I

This controversy arises over provisions in the AMBA that require a "handler" of agricultural commodity to bargain with the accredited association, in this instance, the MACMA, to establish minimum prices and terms for a handler's purchase of agricultural commodity, in this instance, process apples, from Michigan producers. The underlying facts of this controversy are succinctly set forth in the circuit court's decision and order, as follows:

> This dispute arose in 1998 when the Plaintiff [CGI] and the Intervening Defendant [MACMA] could not reach agreement regarding "support" or "acceptance" of a price for apples. The Intervening Defendant invoked the arbitration provisions of the Act. The Plaintiff sought clarification from the Defendant's [AMBB] administrator regarding the ostensible requirement that a cooperative association [CGI] be forced to negotiate with an accredited association [MACMA]. The Plaintiff was advised initially by the administrator that it need not negotiate with the Intervening Defendant for purchases made from its own [CGI's] members. Thereafter,

---

[1] The board is a state of Michigan administrative agency, created within the Michigan Department of Agriculture to administer the AMBA. MCL 290.703(1); MSA 12.94(103)(1).

[2] The MACMA is a member of the Michigan Farm Bureau family of companies. Michigan Processing Apple Growers, Inc., is a division of the MACMA.

Plaintiff decided to purchase only from its members. The Intervening Defendant nonetheless persisted in its demand that Plaintiff submit to arbitration. The Plaintiff refused and asserted that as a cooperative association, it was statutorily defined not to be a "handler" and was not subject to the bargaining and arbitration provisions of the Act. In an about face from its earlier position, the Defendant Board informed Plaintiff through its administrator that Plaintiff was considered a "handler" when it takes delivery of more than the contract amount of product from one of its members and that the amount of the product above the cooperative contract amount is subject to the bargaining provisions of the Act.

A

The parties' dispute over the act's bargaining requirements resulted in simultaneous administrative agency and circuit court actions to resolve the matter. The AMBB notified CGI that it was subject to mandatory bargaining and arbitration. Pursuant to the act's arbitration provisions, MCL 290.716; MSA 12.94(116), the AMBB established a joint settlement committee (hereafter the JSC or the committee) to arbitrate the dispute. CGI claimed that it was exempt from arbitration, and, therefore, the JSC lacked jurisdiction over the dispute.

CGI filed a complaint in the Grand Traverse Circuit Court, seeking declaratory and injunctive relief. The court granted a temporary restraining order (TRO), enjoining the JSC arbitration hearing. However, CGI took no further action and the TRO expired. The JSC resumed the administrative proceedings and renoticed the arbitration hearing for November 23, 1998. CGI contested the jurisdiction of the JSC and did not attend the hearing. The JSC concluded that CGI was

subject to arbitration and, therefore, it had jurisdiction over the dispute, and proceeded with the hearing. On December 21, 1998, a two-member majority[3] of the JSC rendered its decision on the merits, setting minimum prices to be paid for process apples handled by CGI for the 1998 apple crop.[4]

In the meantime, both the AMBB and the MACMA filed motions for summary disposition of the circuit court action, claiming that the court lacked subject-matter jurisdiction. CGI filed a cross-motion for summary disposition pursuant to MCR 2.116(C)(10). Following a hearing with regard to the motions on January 11, 1999, the circuit court issued its decision and order on February 10, 1999, determining that the court had subject-matter jurisdiction over the dispute and that CGI was not subject to mandatory bargaining and arbitration under the AMBA. The court denied the motions for summary disposition by the AMBB and the MACMA, granted summary disposition in favor of CGI, and enjoined the AMBB from asserting jurisdiction over CGI with regard to the issues decided by the court. These appeals followed.

B

In Docket No. 216917, CGI appeals the arbitration award of the JSC, under the act's provision for judicial review of committee awards by this Court, MCL 290.723; MSA 12.94(123). In Docket No. 217396, the MACMA seeks enforcement of the arbitration award,

---

[3] The third member of the JSC, CGI's president and general manager, did not participate in the decision.

[4] This decision apparently was not served on CGI until January 11, 1999, the date of the circuit court hearing.

under the act's provision for enforcement by either party of a majority decision of the JSC, MCL 290.721; MSA 12.94(121). In Docket No. 218400, the AMBB appeals the circuit court's grant of summary disposition in favor of CGI. In Docket No. 218584, the MACMA separately appeals the circuit court's grant of summary disposition in favor of CGI.

## II

We first address the issue of jurisdiction. The committee concluded that CGI had a duty to negotiate process apple prices under the AMBA, and therefore, it had subject-matter jurisdiction over the dispute pursuant to the administrative remedies provided in the act. The circuit court concluded that the court had original jurisdiction because this was a matter of statutory construction and, further, because the circuit court is a court of general equity jurisdiction and CGI sought declaratory and equitable relief.

## A

Whether a court has subject-matter jurisdiction is a question of law subject to review de novo. *Specht v Citizens Ins Co of America*, 234 Mich App 292, 294; 593 NW2d 670 (1999); *Alliance for the Mentally Ill of Michigan v Dep't of Community Health*, 231 Mich App 647, 659; 588 NW2d 133 (1998). "Circuit courts are courts of general jurisdiction, and have original jurisdiction over all civil claims and remedies 'except where exclusive jurisdiction is given by the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.' " *Farmers Ins Exchange*

*v South Lyon Community Schools*, 237 Mich App 235, 241; 602 NW2d 588 (1999), quoting MCL 600.605; MSA 27A.605. As a court of general equity jurisdiction, a circuit court has subject-matter jurisdiction to issue an injunction. *Alliance for the Mentally Ill, supra* at 660.

B

The AMBB is charged with administering the AMBA. MCL 290.703(1); MSA 12.94(103)(1). However, the Michigan Supreme Court also has recognized that the circuit courts have subject-matter jurisdiction over certain matters of statutory construction involving the AMBA. *Michigan Canners & Freezers Ass'n, Inc v Agricultural Marketing & Bargaining Bd*, 397 Mich 337, 345-346; 245 NW2d 1 (1976), *(After Remand)*, 416 Mich 706; 332 NW2d 134 (1982), rev'd in part on other grounds 467 US 461; 104 S Ct 2518; 81 L Ed 2d 399 (1984). (On remand from the United States Supreme Court, the Michigan Supreme Court ordered a remand to the circuit court for further consideration and entry of a final judgment. 422 Mich 862 [1985].) The doctrine of primary jurisdiction applies when concurrent original subject-matter jurisdiction exists between the courts and an administrative agency. *Rinaldo's Constr Corp v Michigan Bell Telephone Co*, 454 Mich 65, 70; 559 NW2d 647 (1997); LeDuc, Michigan Administrative Law, § 10:01, p 5. "[T]he courts may defer to the agency in order to promote uniformity and take advantage of the special powers and expertise the agency may have in dealing with the subject matter." *Id.*

No fixed formula exists for determining whether the doctrine of primary jurisdiction applies; each case

must be decided on its own facts. *Rinaldo's, supra* at 71; *White Lake Improvement Ass'n v City of White-hall,* 22 Mich App 262, 284; 177 NW2d 473 (1970). The question is whether the purposes underlying the doctrine will be furthered by its application to particular litigation. *Rinaldo's, supra* at 71. Three major purposes generally govern this analysis. *Id.* First, a court should consider to what extent the agency's specialized expertise makes it a preferable forum for resolving the issue. *Id.* Second, the court should consider the need for uniformity and consistency in resolution of the issue. *Id.* at 71, 77. Third, it should consider whether judicial resolution of the issue will have an adverse effect on the agency's performance of its regulatory responsibilities. *Id.* at 71.

We conclude that, in this case, the doctrine of primary jurisdiction required that the circuit court defer to the jurisdiction of the AMBB.[5] This case can be distinguished from the Michigan Supreme Court's prior decision concerning jurisdiction under the AMBA. See *Michigan Canners, supra,* 397 Mich 346 (court may determine whether the Administrative Procedures Act applies to the AMBA). This case does not involve a "broad question of the construction of the statute," such as the applicability of a general administrative law statute, which may properly be resolved in the circuit court. This case involves a much narrower issue of statutory construction, concerning terminol-

---

[5] The parties dispute whether jurisdiction in the circuit court is also improper under the doctrine of exhaustion of administrative remedies. However, this Court has original jurisdiction to review administrative decisions under the AMBA. MCL 290.705, 290.723; MSA 12.94(105), 12.94(123). Thus, even were CGI required to exhaust its administrative remedies, the JSC decision at issue would not be subject to judicial review in the circuit court.

ogy central to the legislative schemes underlying the AMBA. The administrative agency's expertise in agricultural marketing and bargaining makes the agency a preferable forum for resolution of the issue. This is not a case of basic issues of fact and law that the courts address on a regular basis. See *Attorney General v Diamond Mortgage Co*, 414 Mich 603, 614-615; 327 NW2d 805 (1982) (courts can determine obligations of real estate brokers under consumer protection, usury, and corporation laws).

Michigan enacted the AMBA in 1972. 1972 PA 344. As enacted,[6] the AMBA established a system of mandatory support of the accredited association, so that all producers were bound by the accredited association's marketing contracts, which precluded the producer from marketing its own goods. *Michigan Canners*, *supra*, 467 US 477. The AMBA, in effect, combined aspects of two legislative schemes, fair labor practices legislation and agricultural and marketing bargaining legislation, into a single Michigan law. *Id.* at 466; MCL 290.704, 290.707, 290.713; MSA 12.94(104), 12.94(107), 12.94(113); see also Agricultural Fair Practices Act of 1967, 7 USC 2301 *et seq.*, and the proposed National Agricultural Marketing and Bargaining Act of 1971, "The Sisk Bill," HR 7597; Legislative Analysis, SB 1225, March 6, 1972. The specialized nature of the legislative schemes underlying the act and agri-

---

[6] The United States Supreme Court subsequently held that certain provisions of the AMBA were preempted by federal law, and, consequently, on remand from the Michigan Supreme Court, the circuit court held that specific provisions were unconstitutional and void as applied to nonmember producers, i.e., a producer who has not appointed an association as exclusive bargaining agent in negotiations with handlers. *Michigan Canners*, *supra*, 467 US 461; *supra*, 422 Mich 862; unpublished opinion of the Ingham Circuit Court, Final Judgment and Permanent Injunction, issued July 22, 1985 (Case No. 74-16369CZ).

cultural production, marketing, and economic systems require deference to the administrative agency process. In fact, the arguments before the circuit court in this dispute bear out the necessity and benefit of specialized expertise in deciding this matter in the first instance: the circuit court requested the opposing parties' "shorthand version of the economics of the fruit industry," recognizing that the parties had made polar statements regarding the effect of the decision on the agricultural marketing system, only one of which could be correct.

Further, collective bargaining and unfair labor practices are generally viewed as matters that require uniformity and consistency in the determinations. In this regard, for example, the public employment relations act,[7] and its provisions, takes precedence over other conflicting laws to ensure uniformity, consistency, and predictability in the complex field of public-sector labor law, and the Michigan Employment Relations Commission is the sole agency charged with the interpretation and enforcement of this field of law. *Kent Co Deputy Sheriffs' Ass'n v Kent Co Sheriff*, 238 Mich App 310, 313; 605 NW2d 363 (1999). The need for consistency and uniformity applies equally to collective bargaining and labor practices in the agricultural industry.

Because of the number and varying nature of agricultural producers, associations, and handlers in the state, the resolution of disputes in the circuit courts could seriously hamper the AMBB's responsibilities for administering the act and achieving the Legislature's purpose in establishing a statewide marketing and

---

[7] MCL 423.201 *et seq.*;  MSA 17.455(1) *et seq.*

bargaining system. Any economic benefits to the farming industry could be lost in a disjointed array of independent lower court decisions, rendering the mandatory arbitration provisions of the act ineffectual.

Moreover, the legislative history of the AMBA supports a conclusion that the Legislature considered and rejected the concept that jurisdiction under the act be vested in the circuit courts. The legislation, as introduced, would have provided for circuit court review of agency decisions:

> The board may petition any circuit court wherein the failure or refusal to bargain or unfair practice occurred or wherein the person who engaged in such failure or refusal to bargain or unfair practice resides or transacts business, for the enforcement of its orders, and for appropriate temporary relief or restraining order and shall file in the court the record in the proceedings. [SB 1225, § 15(1).]

> Any person aggrieved by a final order of the board granting or denying in whole or in part the relief sought may obtain a review of such order in any circuit court in the circuit wherein the refusal to bargain was alleged to have occurred or wherein such person resides or transacts business. . . . [SB 1225, § 15(2).]

However, the act, as subsequently adopted, eliminated the circuit court review provisions and provided only for review by this Court, as outlined in § 23, and § 5, MCL 290.705; MSA 12.94(105). HB 5951, House substitute for SB 1225. The Legislature clearly rejected a judicial review system that vested jurisdiction in the circuit courts.

The express judicial review provisions in the AMBA, and the need for specialized expertise and consistency in matters of bargaining and unfair labor prac-

tices, mandate a conclusion that jurisdiction to decide this matter rests with the administrative agency under the doctrine of primary jurisdiction.

III

We next consider whether CGI is a "handler" as defined in the act and, therefore, subject to mandatory bargaining and arbitration.

A

This Court reviews questions of law, including statutory interpretation, de novo. *Faircloth v Family Independence Agency*, 232 Mich App 391, 406; 591 NW2d 314 (1998). The first step in discerning the intent of the Legislature is to consider the language of the statute. *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 398; 572 NW2d 210 (1998). The language must be read according to its ordinary and generally accepted meaning. *Id.* If the language of the statute is clear and unambiguous, judicial construction is not permitted. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515, 517-518; 573 NW2d 611 (1998).

If reasonable minds can differ with regard to the meaning of a statute, judicial construction is appropriate. *Adrian School Dist v Michigan Public School Employees' Retirement System*, 458 Mich 326, 332; 582 NW2d 767 (1998). The primary goal of statutory construction is to ascertain and give effect to the intent of the Legislature. *Frankenmuth Mut Ins, supra* at 515. The court should apply a reasonable construction to best accomplish the Legislature's purpose. *Marquis v Hartford Accident & Indemnity*

*(After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994). Although statutory interpretation is a question of law, subject to review de novo, reviewing courts accord great weight to the administrative interpretation of a statute, unless that interpretation is clearly wrong. *Hoste v Shanty Creek Management, Inc*, 459 Mich 561, 569; 592 NW2d 360 (1999).

B

Under the AMBA, a "handler" is obligated to bargain with the accredited association for the agricultural commodity involved regarding terms relative to trading of the commodity. MCL 290.713; MSA 12.94(113). If the accredited association (the MACMA in this case) and the handler fail to reach agreement, a handler may elect not to purchase any quantity of the commodity during the marketing period. MCL 290.715; MSA 12.94(115). If the handler does not so elect in accordance with the provisions of the act, the handler shall be deemed to have consented to settlement of all issues in dispute by arbitration. MCL 290.716; MSA 12.94(116).

1

Subsection 2(g) of the act defines a handler:

"Handler" means a person other than an association engaged in the business or practice of acquiring agricultural commodities from producers or associations for processing or sale; grading, packaging, handling, storing or processing agricultural commodities received from producers or associations; contracting or negotiating contracts or other arrangements, written or oral, with producers or associations with respect to the production of any agricultural commodity; or acting as an agent or broker for a handler in

the performance of any function or act specified above. It does not include a producer who sells at a retail establishment which he owns and operates or who sells directly to consumers at a produce market, agricultural commodities produced by him and agricultural commodities produced by another producer subject to value limitation established by the board. [MCL 290.702(g); MSA 12.94(102)(g).]

An "association," by definition, is not a handler. Thus, if CGI qualifies as an "association," it is not subject to arbitration. Subsection 2(a) defines an association:

"Association" means a cooperative association of producers or a division thereof, or federation of cooperative associations of producers engaged in the marketing, bargaining, shipping or processing functions of an agricultural commodity on behalf of its members who are producers of such agricultural commodity. [MCL 290.702(a); MSA 12.94(102)(a).]

Under subsection 2(i), a member is likewise defined:

"Member" means a producer who has entered into a contract with an association appointing the association as his exclusive agent in negotiations with handlers with respect to the marketing of an agricultural commodity. [MCL 290.702(i); MSA 12.94(102)(i).]

2

The committee determined that CGI is not an "association," as defined in the act, for several reasons, including the manner of voting, past conduct, and public policy. While we agree with the committee's ultimate conclusion, we disagree with its reasoning. Whether plaintiff is subject to arbitration rests on a determination whether plaintiff is a "handler" and, in this case, whether plaintiff is an "association," as

defined in § 2 of the statute. The latter question is resolved from the plain language of the statute.

a

In the arbitration hearing, the MACMA argued, and the committee apparently agreed, that CGI does not meet the act's definition of "association," in part, because it is not structured under a one-vote-per-member system, which is characteristic of an association and a requirement for accreditation under the act. We find this interpretation of the act clearly wrong.

Where a statute sets forth its own definitions, the terms must be applied as expressly defined. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996). Under the act's definition of association, there is no requirement with regard to the voting structure of an association. While the act does require that an association seeking accreditation meet the one-member one-vote requirement, this requirement appears only under the accreditation provision in § 7. We find no basis for adding it to the definition of association in § 2.

Section 7 sets forth the requirements for accrediting an association. Subsection 7(a) requires that "[t]he association meets the requirements of the Capper-Volstead Act, 7 USC 291-2." MCL 290.707(a); MSA 12.94(107)(a). The Capper-Volstead Act, § 291, authorizes agricultural producer "associations," provided that such associations conform to one or both of two requirements: (1) that no member is allowed more than one vote, or (2) *"[t]hat the association does not pay dividends on stock or membership capital in*

*excess of 8 per centum per annum,"* and, in either case, (3) that the association not deal in the products of nonmembers to an amount greater in value than that handled for members. (Emphasis added.) Subsection 7(b) of the AMBA requires, inter alia, that the association's bylaws provide that "[e]ach member of the association shall have 1 vote in all votes of the membership of the association . . . ."

The definition of an association under § 2 of the AMBA does not require that the association meet the requirements under § 7. Had the Legislature intended a one-member one-vote requirement in the § 2 definition, it certainly could have expressly set forth its intent, as it did in § 7 for an association seeking accreditation. Provisions of a statute must be read in the context of the entire statute so as to produce an harmonious and consistent whole. *Weems v Chrysler Corp*, 448 Mich 679, 699-700; 533 NW2d 287 (1995). The omission of a provision in one part of a statute, which is included elsewhere in the statute, should be construed as intentional. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). Under the plain language of the AMBA, an association need not meet the one-member one-vote requirement unless it is seeking accreditation under § 7.

b

The plain language of the statute requires that an "association" be engaged in the specified activities "on behalf of its members." The MACMA and the AMBB contend that because CGI has nonmember business, i.e., it purchases commodity beyond the contracted quotas with members and purchases from nonmembers, and because CGI does not have "members" as

defined by the act, it is not engaged in activities "on behalf of its members." CGI contends that the definition of "member" is used inconsistently in the act and that the definition of member refers to a member of the accredited association. We conclude that the plain language of the statute requires that an "association" be engaged in activities on behalf of members, as defined in § 2; however, there is no requirement that an association's activities be limited to only members so defined.

The act's definition of "member" requires that the producer must have entered into a contract with the association appointing it as the exclusive agent in negotiations with handlers. MCL 290.702(i);   MSA 12.94(102)(i). We find no basis in the statute for applying this definition to only an accredited association. The Legislature set forth separate requirements for an association seeking accreditation under § 7 of the act. Again, had the Legislature intended that the definition of member apply only to an accredited association, it could easily have included this requirement in § 7, rather than the general definitions in § 2. This conclusion is supported by the plain language in § 3 establishing the AMBB: "One member shall be considered a lay person, who shall not be a producer, handler, or *a member of an association*, as defined under this act." MCL 290.703(2); MSA 12.94(103)(2) (emphasis added).[8] It is undisputed that CGI does not

---

[8] Even were we to conclude that the language of the statute is ambiguous, we note that the legislative history of the AMBA favors an interpretation that the definition of member applies, in general, to an association. The definition of "member" was not set forth in the legislation, as introduced. SB 1225. After the definition was added in the House substitute bill, the Legislature apparently recognized that the term "member" was used in various contexts, and, consequently, amended the bill to clarify

have exclusive contracts with its members, as defined in § 2. Therefore, CGI fails to meet the definition of an association under the act.

c

Finally, we disagree that under the act's definition of an association, only member business is exempt from the bargaining provisions. The act does not require that an association limit its activities to "only" members. There is no basis for applying a limitation where there is no limiting language in the definition, and no such qualification is otherwise implied. *Alliance for the Mentally Ill, supra* at 657-659. It is clear from the reference to the Capper-Volstead Act's definition of an association, which the Legislature applied in § 7 of the act, that the Legislature recognized that an association may conduct nonmember business.

Our conclusion regarding nonmember business is consistent with other provisions of the act, thus resulting in an harmonious enactment as a whole. The act expressly excludes from the quantity of commodity used in calculations for accreditation purposes any quantity of the commodity contracted with a producer *owned and controlled* processing cooperative. MCL 290.707(c); MSA 12.94(107)(c). The act likewise excludes such quantities from the calculation for revoking the accreditation of an association. MCL

those references to "member" that did not refer to a "member of an association," e.g., in § 3 by striking the word "members" and inserting "individuals" and inserting "of the board" after the word member in various locations. 1972 Journal of the House 2865. The Legislature did not change the definition of member or qualify the references to a member of an association. Thus, reading the act as a whole, we conclude that the Legislature intended that the definition of member apply to an association, in general.

290.712(b);   MSA 12.94(112)(b). The act prohibits members who have any such contracts from serving on the marketing and bargaining committee. MCL 290.707(d); MSA 12.94(107)(d). Reading the act as a whole, the most reasonable construction is that the Legislature intended to exempt from the mandatory bargaining process quantities of a commodity contracted by producers with producer owned and controlled processing cooperatives, where they qualify as an association under the act.

3

We conclude that CGI is not an association, as defined in the act, for the reason that it is not acting on behalf of members, as defined under § 2, i.e., on behalf of producers who have entered into contracts appointing the association as their exclusive agent in negotiations with handlers. Because CGI does not meet the definition of an association, it is a "handler" and, therefore, is not exempt from the mandatory bargaining and arbitration provisions of the act. We leave to the Legislature the enactment of any changes to the AMBA necessary to effect an intent to the contrary, because we are bound by the plain language of the statute. Courts may not speculate regarding the probable intent of the Legislature beyond the language expressed in the statute. *In re Schnell*, 214 Mich App 304, 310; 543 NW2d 11 (1995).

IV

We render the following dispositions. In Docket No. 217396, we grant the request for an order enforcing the arbitration decision of the AMBB and the JSC. In

Docket No. 216917, we affirm the determination of the AMBB and the JSC and hold that CGI is subject to mandatory bargaining. In Docket No. 218400 and Docket No. 218584, we reverse the circuit court's order on the ground that subject-matter jurisdiction over this matter rested with the AMBB.