PEOPLE v SHEEKS

Docket No. 220199. Submitted December 5, 2000, at Lansing. Decided February 9, 2001, at 9:05 A.M.

Robert M. Sheeks was convicted in the 12th District Court, James M. Justin, J., of towing a silage bagger that was in excess of eleven feet wide on a public highway in violation of the width restrictions of § 717 of the Michigan Vehicle Code, MCL 257.717; MSA 9.2417. The defendant argued that his movement of the silage bagger from a farm to which it had been loaned back to the farm of the owner was subject to the exception of subsection 2 of § 717, MCL 257.717(2); MSA 9.2417(2), which provided that a person may "move an implement of husbandry of any width on a highway as required for normal farming operations without obtaining a special permit for an excessively wide vehicle or load" and to the exception of subsection 2 of § 716, MCL 257.716(2); MSA 9.2416(2), which provides that the provisions relating to size do not apply "to an implement of husbandry incidentally moved upon a highway." The district court rejected the defendant's assertion that the movement of the silage bagger fell within either of the statutory exceptions, found the defendant guilty, and ordered the defendant to pay a fine and costs. The defendant appealed to the Jackson Circuit Court, and the court, Alexander C. Perlos, J., affirmed, holding that the statute did not contemplate the movement of such equipment across the state. The defendant appealed by leave granted.

The Court of Appeals *held*:

1. The defendant concedes that the silage bagger exceeded the statutory width restrictions, and the prosecutor concedes that the silage bagger is an implement of husbandry. Accordingly, the question whether the silage bagger is exempt from the statutory width restrictions pursuant to subsection 717(2) depends on whether the transportation of the bagger from one farm to another constituted "normal farming operations" within the meaning of the subsection.

2. After the event that gave rise to the charge in this case had taken place, the Legislature enacted 1999 PA 63, which amended the "required for normal farming operations" language of subsection 717(2) to provide: "required, designed, and intended for farming operations."

3. Absent an express or implied indication that the Legislature intended otherwise, statutes are presumed to operate prospectively. However, an amendment may apply retroactively where the Legislature enacts an amendment for the purpose of clarifying an existing statute and of resolving a controversy regarding the meaning of the statute.

4. The legislative analysis that was prepared in support of the bill that became 1999 PA 63 indicates a clear legislative intent that the amended language was meant to clarify, rather than substantively alter, the existing statutory provision. Accordingly, the amended language should be applied to the present case. Because there was undisputed testimony that the silage bagger was "required, designed, and intended for farming operations," the lower courts erred as a matter of law in holding that the farm implement exception of subsection 717(2) was not applicable in this case.

Reversed.

ZAHRA, J., concurring, stated that the conclusion of the majority that it was the Legislature's intent that the farm implement exception of subsection 717(2) apply in the circumstances presented in this case can be reached by reference to the language of the amended provision alone and without recourse to consideration of the legislative history or bill analysis.

1. STATUTES — RETROACTIVITY — JUDICIAL CONSTRUCTION.

Absent an express or implied indication that the Legislature intended otherwise, statutes are presumed to operate prospectively; a statutory amendment may apply retroactively where the Legislature enacts the amendment for the purpose of clarifying an existing statute and of resolving a controversy regarding the meaning of the statute.

2. STATUTES — HIGHWAYS — WIDTH RESTRICTIONS — FARM IMPLEMENTS — JUDICIAL CONSTRUCTION.

The 1999 amendment of the provision of the Michigan Vehicle Code relating to the farm implement exception to width restrictions of vehicles operating on public highways was in the nature of a clarification of the Legislature's intent with respect to that exception and is thus properly considered in construing the intent of the provision before its amendment (1999 PA 63, MCL 257.716[2]; MSA 9.2416[2]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John G. McBain*, Pros-

ecuting Attorney, and *Jerrold Schrotenboer*, Chief
Appellate Attorney, for the people.

*David J. Reader* and *Deborah A. Lee*, for the
defendant.

Before: O'Connell, P.J., and Zahra and B. B.
MacKenzie*, JJ.

O'Connell, P.J. Defendant appeals by leave granted
a circuit court order affirming a district court's deter-
mination that defendant violated the ninety-six-inch
width restriction provision of the Michigan Vehicle
Code, MCL 257.717; MSA 9.2417. We reverse.

At the time of the proceedings below, Frank Mun-
sell owned a farming operation that employed defen-
dant. Munsell testified at the district court hearing
that he invented a device called a "silage bagger."
Munsell testified as follows regarding the silage
bagger:

> It's to take the place of an upright silo . . . . The silage
> bagger is an alternative method of storing silage, haylage,
> oatlage, whatever product basically that you'd like to feed
> cattle. . . . It's a unit—I guess you bring it up in a conven-
> tional wagon that you'd normally be dumping into a blower
> that blows material into a silo. You'd bring it up to the
> silage bagger, dump it into the silage bagger. And there's an
> auger inside, and it packs it into this plastic bag, which is
> actually the silage bag, at a rate of, per se, a ton per lineal
> foot.

Munsell noted that the silage bagger must have a trac-
tor hooked to its front end in order to operate, but

---

* Former Court of Appeals judge, sitting on the Court of Appeals by
assignment.

that it could be towed to a destination with either a tractor or a truck.

Officer Barry Archer testified at the district court hearing that on November 9, 1998, he observed defendant driving on US-127. Archer stated that US-127 is a "green route," which permits vehicles up to 102 inches wide,[1] and that he pulled defendant over because he suspected that defendant lacked a permit for the wide equipment that he was towing. The equipment measured eleven feet, two inches wide, and Archer issued defendant a commercial law citation. Archer testified that defendant told him that he was towing a silage bagger back to Munsell's farm from another farm to which Munsell had loaned it.

MCL 257.717(1); MSA 9.2417(1) provides that the total outside width of a vehicle or its load may not exceed 96 inches. Subsection 2, MCL 257.717(2); MSA 9.2417(2), contains an exception:

> A person may operate or move an implement of husbandry of any width on a highway as required for normal farming operations without obtaining a special permit for an excessively wide vehicle or load under [MCL 257.725; MSA 9.2425]. The operation or movement of the implement of husbandry shall be in a manner so as to minimize the interruption of traffic flow. A person shall not operate or move an implement of husbandry to the left of the center of the roadway from a half hour after sunset to a half hour before sunrise, under the conditions specified in section 639, or at any time visibility is substantially diminished due to weather conditions. A person operating or moving an implement of husbandry shall follow all traffic regulations.

---

[1] MCL 257.717(7); MSA 9.2417(7) provides that the director of the state transportation department, a county road commission, or local authority may designate certain highways to allow vehicles up to 102 inches in width.

MCL 257.716(2); MSA 9.2416(2) provides an exception for "an implement of husbandry incidentally moved upon a highway . . . ." MCL 257.21; MSA 9.1821 defines "an implement of husbandry" as "a vehicle which is either a farm tractor, a vehicle designed to be drawn by a farm tractor or an animal, a vehicle which directly harvests farm products, or a vehicle which directly applies fertilizer, spray, or seeds to a farm field."

Defendant argued that the silage bagger was "required for normal farming operations" and "incidentally moved upon a highway," and therefore qualified under both exceptions. The district court ruled that the "normal farming operations" exception of MCL 257.717(2); MSA 9.2417(2) applied in a situation where a farmer had an operation in various locations that required him to transport his equipment from one location to another. The district court found that the facts of the case fell outside the scope of "normal farming operations" because Munsell's farm had merely loaned the equipment to another farm. The district court further held, without explanation, that the "incidentally moved upon a highway" exception contained in MCL 257.716(2); MSA 9.2416(2) did not apply. The court concluded that defendant's transportation of the silage bagger was a violation of MCL 257.717(1); MSA 9.2417(1), and ordered him to pay fines and costs in the amount of $110.

Defendant appealed this decision to the circuit court. The circuit court concluded that the statute did not contemplate movement "across the state" and that transportation of the equipment was "dangerous and extra hazardous to members of the public and

should not be permitted." The circuit court affirmed the district court's ruling.

Defendant's first contention on appeal is that both lower courts erred in concluding that the silage bagger did not fall within the "normal farming operations" exception of MCL 257.717(2); MSA 9.2417(2). Resolution of this issue entails a matter of statutory interpretation and, therefore, involves a question of law that we review de novo. *Sands Appliance Services, Inc v Wilson*, 463 Mich 231, 238; 615 NW2d 241 (2000); *Casey v Henry Ford Health System*, 235 Mich App 449, 450; 597 NW2d 840 (1999). Defendant does not dispute that the silage bagger was 134 inches wide. The prosecutor concedes that the silage bagger was an implement of husbandry.

The first step in discerning the intent of the Legislature is to consider the statutory language itself. *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 166; 610 NW2d 613 (2000). We read statutory language "according to its ordinary and generally accepted meaning." *Id.* Unless reasonable minds could differ regarding the meaning of the language, judicial construction is not warranted. *Id.*

1999 PA 63, effective June 17, 1999, amended the statutory provision containing the "normal farming operations" exception. The amendment broadened the exception to include all implements of husbandry that are "required, designed, and intended for farming operations." MCL 257.717(2); MSA 9.2417(2). Defendant contends that the amendment makes clear that the legislative intent behind the section was to provide a broad exemption for implements of husbandry.

Absent an express or implied indication that the Legislature intended otherwise, statutes are presumed to operate prospectively. *Allstate Ins Co v Faulhaber*, 157 Mich App 164, 166; 403 NW2d 527 (1987). However, an amendment may apply retroactively where the Legislature enacts an amendment to clarify an existing statute and to resolve a controversy regarding its meaning. *Adrian School Dist v Michigan Public School Employees' Retirement System*, 458 Mich 326, 337; 582 NW2d 767 (1998); *Faulhaber, supra* at 167; 1A Singer, Sutherland Statutory Construction (5th ed), § 22.34, p 297.

The preamendment version of the statute exempted implements of husbandry that were required for "normal farming operations," but the statute did not define "normal" or "normal farming operations." In the amendment, our Legislature deleted the word "normal" and replaced it with the phrase "required, designed, and intended." In addition, we note the following portions of the accompanying legislative analysis:

> The vehicle code, however, generally exempts farm equipment and vehicles from its requirements, and with regard to oversized vehicles, the code specifically allows a person to operate or move an "implement of husbandry" . . . of any width on a highway as required for normal farming operations, without obtaining a special permit . . . .
>
> Reportedly, in either Lenawee or Monroe county, someone driving oversized farm equipment from a dealership to a farm received a citation from a Department of State Police Motor Carrier Division officer for operating an oversized vehicle without a special permit. Apparently, the effect of the judge's ruling in this case was that even though the vehicle in question was, apparently, farm equipment, it did not fall under the Michigan Vehicle Code exemption for farm equipment ("implements of husbandry") from special

permitting requirements for oversized vehicles. At the joint request of a farm equipment dealers' association and an agricultural organization, *legislation has been introduced to clarify that implements of husbandry are to be exempt* from special "oversized" permitting requirements. [House Legislative Analysis, HB 4464, April 29, 1999 (emphasis added).]

This legislative analysis supports defendant's contention that the amendment was intended to clarify the exemption. In light of the specific amendment language, and according the legislative analysis some weight, we conclude that the amendment indicates a legislative intent to clarify, rather than substantively alter, the existing statutory provision.[2] Accordingly,

---

[2] In addition, as part of the arguments in favor of the amendment, the legislative analysis stated:

Regardless of the actual details of the Lenawee or Monroe county case, *the Michigan Vehicle Code's exemption for oversized farm equipment needs to be clarified* to allow such equipment to be driven from a dealership to a farm without the driver being ticketed for driving an oversized vehicle without a special permit. The vehicle code currently doesn't require a special permit for the operation of oversized "implements of husbandry" when the implement of husbandry is being operated "as required for normal farming operations," *and it seems obvious that driving an oversized piece of farm equipment from a dealership to a farm should fall under this exemption.* The bill would do this, eliminating entirely the reference to "normal" farming operations and instead exempting implements of husbandry of any width if the implement of husbandry were being operated or moved not only as required for farming operations, but also as "designed" and as "intended" for farming operations. [Legislative Analysis, *supra* (emphasis added).]

This language further supports our conclusion that the Legislature intended for the amendment to clarify the then existing statute. We note that this analysis indicates that at least part of the reason for the clarification was to permit a purchaser of farm equipment to take it home from the dealership without a special permit. However, no language limiting the application of the section to trips between a dealership and the purchaser's farm is contained in the relevant statutory sections.

we apply the language contained in the present version of MCL 257.717(2); MSA 9.2417(2).

The prosecutor's contention, both below and on appeal, is that defendant's employer was engaged in a "rental business." Our review of the record revealed no support for the prosecutor's contention, at least with respect to the silage bagger. Further, the undisputed testimony from defendant's employer indicates that the silage bagger was "required, designed, and intended" for farming operations. Munsell testified that he invented the silage bagger specifically for use in his farming operations. Therefore, the conclusion of the lower courts that defendant did not fall within the implement of husbandry exception of MCL 257.717(2); MSA 9.2417(2) was erroneous as a matter of law.

Because we conclude that defendant did qualify for the exemption contained in MCL 257.717(2); MSA 9.2417(2), a review of defendant's remaining issues is unnecessary.

Reversed. We do not retain jurisdiction.

B. B. MACKENZIE, J., concurred.

ZAHRA, J. (*concurring*). I concur in the majority's decision to reverse the lower courts' determination that defendant violated MCL 257.717; MSA 9.2417. I agree that under the plain language of the statute, defendant qualified for the exemption contained in MCL 257.717(2); MSA 9.2417(2), as amended by 1999 PA 63. I write separately, however, to clarify that I reach that conclusion without considering the legislative history of the statutory amendment.

The majority relies, in part, on the legislative analysis of HB 4464 in concluding that the amended ver-

sion of MCL 257.717; MSA 9.2417 applies retroactively to the circumstances at issue in this case. While I acknowledge that the legislative analysis is consistent with the conclusion that the amended version of MCL 257.717(2); MSA 9.2417(2) should be given retroactive effect, legislative history is not an indicator on which we need rely to reach that conclusion. See Scalia, A Matter of Interpretation: Federal Courts and the Law (New Jersey: Princeton University Press, 1997), pp 29-31, 35-36 (decrying the use of legislative history as an indicator of the meaning of a statute).

As stated by the majority, statutes are presumed to operate prospectively unless the Legislature expressly or impliedly indicated otherwise. *Allstate Ins Co v Faulhaber*, 157 Mich App 164, 166; 403 NW2d 527 (1987). Amendments may apply retroactively where the Legislature enacts an amendment to clarify an existing statute and resolve a controversy regarding its meaning. *Adrian School Dist v Michigan Public School Employees' Retirement System*, 458 Mich 326, 337; 582 NW2d 767 (1998); *Faulhaber, supra* at 167. Moreover, the general rule of prospectivity does not apply to statutes or amendments that are remedial or procedural. *Stanton v Battle Creek*, 237 Mich App 366, 373; 603 NW2d 285 (1999); *Faulhaber, supra* at 166. A statute is remedial or procedural if it is designed to correct an existing oversight in the law, to redress an existing grievance, or to introduce regulations conducive to the public good, or if it is intended to reform or extend existing rights. *Id.*; *Seaton v Wayne Co Prosecutor (On Second Remand)*, 233 Mich App 313, 320; 590 NW2d 598 (1998), quoting *Rookledge v Garwood*, 340 Mich 444, 453; 65 NW2d 785 (1954).

The preamendment version of MCL 257.717(2); MSA 9.2417(2) exempted implements of husbandry that were required for "normal farming operations." The Legislature, through the 1999 amendment of the statute, deleted the word "normal," replacing it with the phrase "required, designed, and intended for." The Legislature's change in that language plainly indicates an intent to clarify the statute and to reform existing rights under the statute. The Legislature is presumed to have intended the meaning it plainly expressed. *People v Venticinque*, 459 Mich 90, 99-100; 586 NW2d 732 (1998); *Nation v W D E Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997). Accordingly, the present version of MCL 257.717(2); MSA 9.2417(2) may be applied retroactively. For these reasons, I would reverse the lower courts' determination in this case without relying on legislative history.