YOUNG, J.
This Court must determine whether the Michigan Catastrophic Claims Association (MCCA) has authority to refuse to indemnify member insurers for unreasonable charges. In these consolidated appeals, the MCCA refused to indemnify its member insurers, United States Fidelity Insurance & Guaranty Company (USF&G) and Hartford Insurance Company of the Midwest (Hartford) (together, plaintiffs), for personal protection insurance (PIP) benefits[1] in excess of $250,000.[2] The MCCA claimed that the hourly rates for attendant care services agreed to by plaintiffs were unreasonable and that it was not required to reimburse member insurers for unreasonable payments. Plaintiffs argued that the MCCA lacked authority to refuse to indemnify their claims on the grounds that the charges they paid were unreasonable. We hold that when a member insurer’s policy only provides coverage for “reasonable charges,”[3] the MCCA has authority to refuse to indemnify unreasonable charges. Accordingly, we reverse the judgment of the Court of Appeals and remand for further proceedings consistent with this opinion.
*418 I. FACTUAL BACKGROUND

A. USF&G v MCCA, DOCKET NO. 133466

USF&G provided no-fault insurance coverage for Daniel Migdal, who was injured in a motor vehicle accident on August 22, 1981. Since his injury, Daniel has required 24-hour attendant care services.
In 1988, Daniel’s father, Michael Migdal, individually and as conservator of Daniel’s estate, filed a first party no-fault action against USF&G, seeking to recover attendant care benefits. In 1990, the parties entered into a consent judgment that provided that USF&G would pay $17.50 an hour for attendant care services with an adjustment for inflation of 8.5 percent compounded annually.[4]
The increased payments occasioned by this consent judgment have, in turn, driven this litigation. As of 2003, when this suit was filed, USF&G was paying $54.84 an hour to Medical Management, a company started by Mr. Migdal to provide his son’s care. Medical Management paid the nurses who actually provided Daniel’s care between $21.00 and $25.00 an hour plus benefits, which raised the average hourly nursing care cost to $32 an hour. As a result, the consent judgment created a profit center for Mr. Migdal. Medical Management kept the remainder of the hourly rate paid by USF&G and recovered approximately $200,000 in profits for 2003 for its operation.
The pay rate has continued to increase and, after Daniel’s benefits exceeded the $250,000 MCCA statutory threshold,[5] USF&G sought indemnification from *419 the MCCA under MCL 500.3104. The MCCA, however, refused to reimburse USF&G beyond $22.05 an hour, a rate that it considered reasonable.

B. HARTFORD v MCCA, DOCKET NO. 133468

Hartford provided no-fault insurance coverage for Robert Allen, who was injured in a motor vehicle accident on November 6, 2001. Allen was prescribed 24-hour attendant care services. Hartford initially paid for those services at the rate of $20 an hour.
In 2003, Allen retained an attorney and demanded that Hartford pay $37 an hour for attendant care services. The parties entered into a settlement agreement that provided that Hartford would pay $30 an hour for three years (May 6, 2003, to May 6, 2006).
Hartford sought indemnification from the MCCA under MCL 500.3104 because its payments to Allen exceeded the $250,000 threshold. The MCCA contested the reasonableness of the hourly rate and refused to reimburse Hartford beyond a rate of $20 an hour.
II. PROCEDURAL HISTORY
USF&G and Hartford each filed a complaint for a declaratory judgment against the MCCA.[6] Each plaintiff requested that the circuit court order the MCCA to reimburse the full rate of the attendant care services each insurer was paying its insured.
*420 The parties filed motions for summary disposition under MCR 2.116(C)(9) and (10),[7] disputing whether the MCCA could refuse to reimburse payments that it deemed unreasonable. The circuit courts entered conflicting judgments. In USF&G’s case, the court entered summary disposition in USF&G’s favor. The court held that MCL 500.3104 does not include a reasonableness requirement and the court could not add one; thus, USF&G was entitled to summary disposition because the MCCA’s argument lacked merit. In Hartford’s case, the court denied Hartford’s motion for summary disposition. The court held that the MCCA could refuse to reimburse unreasonable charges and that whether the charges in that case were reasonable was a question of fact.[8]
The MCCA appealed the grant of summary disposition in USF&G’s favor, and Hartford appealed the denial of its motion. The Court of Appeals consolidated the appeals and held that “the MCCA is statutorily required to reimburse an insurer for 100 percent of the amount that the insurer paid in PIP benefits to an insured in excess of the statutory threshold listed in MCL 500.3104(2), regardless of the reasonableness of these payments.”[9] The Court of Appeals majority explained that “[although MCL 500.3105 and MCL 500.3107 indicate that an insurer is only required to reimburse an insured for reasonable charges, MCL *421 500.3104 does not include a reasonableness requirement.”[10] Thus, the majority concluded that “MCL 500.3104 requires the MCCA to reimburse the insurer for the full amount (above the statutory threshold) of PIP benefits that the insurer is bound to pay to its insured, regardless of the circumstances under which that amount was determined, whether by agreement, judgment, binding arbitration, or otherwise, or the reasonableness of that amount.”[11] Accordingly, the Court of Appeals affirmed the grant of summary disposition in USF&G’s favor, and reversed the denial of Hartford’s motion.[12]
This Court granted the MCCA’s applications for leave to appeal in both cases and asked the parties to address “whether MCL 500.3104(2) obligates the [MCCA] to reimburse member insurers’ reimbursement claims without regard to the reasonableness of the member’s payments to PIP claimants.”[13]
*422 III. STANDARD OF REVIEW
This Court reviews decisions to grant or deny summary disposition de novo.[14] Addressing the issues presented in this case requires that this Court interpret MCL 500.3104. Issues of statutory interpretation are questions of law that this Court reviews de novo.[15]
*423 “When interpreting a statute, our primary obligation is to ascertain and effectuate the intent of the Legislature. To do so, we begin with the language of the statute, ascertaining the intent that may reasonably be inferred from its language.”[16] “In interpreting the statute at issue, we consider both the plain meaning of the critical word or phrase as well as ‘its placement and purpose in the statutory scheme.’ As far as possible, effect should be given to every phrase, clause, and word in a statute.”[17]
IV ANALYSIS
The parties dispute whether the MCCA may review the reasonableness of charges for attendant care services and refuse to indemnify a member insurer when it deems those charges unreasonable.

A. WHETHER THE MCCA HAS AUTHORITY TO REVIEW AND REJECT MEMBER CLAIMS

The narrower threshold issue is whether the Legislature intended to permit the MCCA to conduct any review of claims submitted by member insurers. As stated, the language of the statute is the starting point to determine legislative intent. MCL 500.3104 does not expressly authorize the MCCA to review claims submitted by member insurers. MCL 500.3104(8)(g), however, does provide a broad grant of authority to the MCCA:
(8) In addition to other powers granted to it by this section, the association may do all of the following:
*424 (g) Perform other acts not specifically enumerated in this section that are necessary or proper to accomplish the purposes of the association and that are not inconsistent with this section or the plan of operation.
Accordingly, the MCCA may perform any act “necessary or proper to accomplish” its purpose that is not inconsistent with § 3104 or its plan of operation.
This Court has explained the MCCA’s purpose:
It was created by the Legislature in 1978 in response to concerns that Michigan’s no-fault law provision for unlimited personal injury protection benefits placed too great a burden on insurers, particularly small insurers, in the event of “catastrophic” injury claims. Its primary purpose is to indemnify member insurers for losses sustained as a result of the payment of personal protection insurance benefits beyond the “catastrophic” level, which has been set at $250,000 for a single claimant. * * * In practice, the [MCCA] acts as a kind of “reinsurer” for its member insurers.[18]
*425 Not every member insurer claim is entitled to indemnification under § 3104(2). Section 3104(2) obligates the MCCA to indemnify member insurers as follows:
The [MCCA] shall provide and each member shall accept indemnification for 100% of the amount of ultimate loss sustained under personal protection insurance coverages in excess of [$250,000].[19]
“Ultimate loss” is defined as “the actual loss amounts that a member is obligated to pay and that are paid or payable by the member, and do not include claim expenses.”[20] Therefore, incorporating that definition, the statute provides that “[The MCCA] shall provide and each member shall accept indemnification for 100% of the amount of [the actual loss amounts that a member is obligated to pay and that are paid or payable by the member] sustained under personal protection insurance coverages in excess of [$250,000].”
Each claim must meet the requirements of § 3104(2). First, the claim sought to be indemnified must be for the “ultimate loss,” i.e., “the actual loss amounts that a member is obligated to pay and that are paid or payable by the member.” Second, the claim must be “sustained under personal protection insurance coverages.” And third, the loss must be in excess of the statutory threshold.[21] The MCCA’s obligation to indemnify *426 “100%” of the loss is not triggered unless the member insurer’s claim meets all three requirements.
The Legislature has made policy judgments in setting out these requirements. It has determined that only certain, limited claims are “catastrophic” and require “reinsurance” to alleviate the burden placed on insurers providing no-fault coverage. Thus, it is “necessary or proper to accomplish the [MCCA’s] purposes” and “not inconsistent with [§ 3104]” for the MCCA to review member insurer claims to ensure that they meet the requirements of § 3104(2).
Review of member insurer claims is also consistent with the MCCA’s plan of operation, which, since its original plan of operation in 1978, has provided: “The Association shall, upon verification of the propriety and amount of the payments made and the member’s entitlement to reimbursement therefor, reimburse the member the amount due it.” (Emphasis added.)
Moreover, in In re Certified Question (Preferred Risk Mut Ins Co v Michigan Catastrophic Claims Ass’n), this Court implicitly answered in the affirmative whether review of member claims is permitted.[22] There, the plaintiff, Preferred Risk, was a member insurer that insured an Illinois resident under a policy written in Illinois. The insured was catastrophically injured in an automobile accident in Michigan. The plaintiff sought indemnification for its losses in excess of the $250,000 statutory threshold.[23] The MCCA denied the plaintiffs application for indemnification on the basis that the insured was not a “resident.”[24] This Court held that the *427 indemnification requirement of § 3104(2) only applied to “a policy which was written in this state to provide the security required by § 3101(1) of the no-fault act. . . .”[25] Thus, this Court implicitly held that the MCCA could review claims to determine whether the member insurer is entitled to indemnification because the Court endorsed the MCCA reviewing the residency of the insured.
In addition, In re Certified Question supports the proposition that the MCCA may refuse to indemnify claims that do not meet the requirements of § 3104(2).[26] Concomitant with the absence of an obligation to indemnify is the authority to act accordingly and reject claims that do not meet the requirements of § 3104(2). Indeed, such authority to reject is “necessary or proper to accomplish” the MCCA’s purpose and not inconsis *428 tent with either § 3104 or the MCCA’s plan of operation.
Accordingly, we hold that MCL 500.3104(8)(g) permits the MCCA to review claims submitted by member insurers and reject those that do not meet the requirements of § 3104(2). That leads to the dispositive issue whether that authority permits the MCCA to review the reasonableness of charges for attendant care services and refuse to indemnify a member insurer when it deems those charges unreasonable.

B. WHETHER THE MCCA MAY REVIEW THE REASONABLENESS OF ATTENDANT CARE CHARGES AND REFUSE TO INDEMNIFY UNREASONABLE CHARGES

Plaintiffs argue that § 3104(2) does not contain a “reasonableness” requirement and, instead, focus on the fact that they suffered an “actual loss” due to an “obligation.” Plaintiffs also emphasize the term “100%” in § 3104(2) and argue that if the MCCA indemnifies less than the full amount of their claim, it is not meeting its statutory obligation.
Indeed, § 3104(2) does not contain the word “reasonable” or any variation thereof, and plaintiffs have paid their insureds subject to their obligations under a consent judgment and settlement agreement, respectively. Plaintiffs’ arguments, however, ignore the second requirement of § 3104(2) — that the claim must be “sustained under personal protection insurance coverages.”
In In re Certified Question, this Court held that
the reference to “personal protection insurance coverages” under which the [MCCA] may be liable for indemnification in the event of a catastrophic loss ... is a shorthand reference to the no-fault personal protection insurance coverages that are generally the subject of the act, i.e., those which were written in this state to provide the *429 compulsory security requirements of § 3101(1) of the no-fault act for the “owner or registrant of a motor vehicle required to be registered in this state” ....[27]
Policies written in this state to provide the compulsory security requirements of § 3101(1) must comply with the provisions of the no-fault act. MCL 500.3105(1) obligates a member insurer to pay PIP benefits.[28] MCL 500.3107(l)(a) defines PIP benefits, in relevant part, as “[allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person’s care, recovery, or rehabilitation.” Thus, a no- *430 fault policy written in this state must, at a minimum, provide PIP benefits that include “reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person’s care, recovery, or rehabilitation.” It follows that the losses “sustained under personal protection insurance coverages” will minimally include “reasonable charges.” Insurers are free to provide broader coverage and greater benefits than § 3107 provides.[29] Indeed, insurers may provide expanded coverage for actual or even unreasonable charges.[30] Thus, the member insurer’s policy will ultimately control the standard for the *431 MCCA’s review because the policy establishes the “personal protection insurance coverages.”[31]
Whether the subject charges fall within the terms of the individual policies that covered Daniel Migdal and Robert Allen is not before this Court. The parties have not litigated that issue and we are without the facts necessary to resolve it. The issue before this Court is whether the requirement that member insurer claims *432 be “sustained under personal protection insurance coverages” entitles the MCCA to refuse to indemnify unreasonable charges. We hold that when a member insurer’s policy provides coverage only for “reasonable charges,” the MCCA has authority to refuse to indemnify unreasonable charges. If the policy provides broader coverage, the MCCA must review for compliance with the broader coverage and indemnify claims within that coverage, but it may reject claims in excess of that coverage. Claims in excess of the member insurer’s PIP coverages are not “sustained under personal protection insurance coverages.” Thus, those claims do not meet the three statutory requirements of § 3104(2) and they do not trigger the MCCA’s obligation to indemnify “100%” of the claimed loss. Rather, the MCCA is only obligated to indemnify “100%” of the portion of the claimed loss that meets all three requirements of § 3104(2). Accordingly, we remand these cases to the trial court to determine the PIP coverages provided by the individual policies at issue in these cases and, if appropriate, whether the attendant care charges were reasonable.[32]
*433 V CONCLUSION
All member insurer claims must meet certain requirements of § 3104(2) to be entitled to indemnification from the MCCA. The MCCA may review those claims for compliance with § 3104(2) because such review is “necessary or proper to accomplish” the MCCA’s purpose and is not inconsistent with § 3104 or the MCCA’s plan of operation.[33] The MCCA may additionally reject claims that do not meet the requirements of § 3104(2).[34] One such requirement is that the claimed loss must be “sustained under personal protection insurance coverages.”[35] A loss “sustained under personal protection insurance coverages” is one sustained under a policy providing “the compulsory security requirements of § 3101(1)... .”[36] Under § 3107(l)(a), such policies minimally include “reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person’s care, re *434 covery, or rehabilitation.” When a member insurer’s policy provides coverage consistent with MCL 500.3107(l)(a), the MCCA has authority to refuse to indemnify unreasonable charges. If the policy provides broader coverage, the MCCA may refuse to indemnify only charges in excess of that broader coverage.
We reverse the judgment of the Court of Appeals and remand these cases to the circuit court for proceedings consistent with this opinion.
Taylor, C.J., and Corrigan and Markman, JJ., concurred with Young, J.

 “What are commonly called ‘PIP benefits’ are actually personal protection insurance (PPI) benefits by statute. However, lawyers and others call these benefits PIP benefits to distinguish them from property protection insurance benefits.” Roberts v Farmers Ins Exch, 275 Mich App 58, 66-67 n 4; 737 NW2d 332 (2007) (citation omitted).

 See MCL 500.3104(2)(a).

 MCL 500.3107(1)(a).

 The adjustment was the result of extended negotiations and compromise. At the time of the settlement negotiations (the late 1980s), the cost of medical care was rising at a rate of over 10 percent annually.

 MCL 500.3104(2)(a). The threshold has since been increased to $440,000. MCL 500.3104(2)(h).

 USF&G also sought reformation of its consent judgment with Mr. Migdal. The court granted Mr. Migdal summary disposition under MCR 2.116(C)(8). USF&G did not file a claim of appeal from that order. Although Mr. Migdal filed a brief in this Court responding to this Court’s order granting leave to appeal, see n 13 infra, the time for appealing the circuit court’s order dismissing Mr. Migdal has expired, see MCR 7.205(F)(3), and Mr. Migdal is not a party to these proceedings.

 The court in USF&G’s case declined to review the case under MCR 2.116(C)(9) because the parties relied on matters outside the pleadings. MCR 2.116(G)(5).

 Because USF&G’s motion was granted before the court had ruled on Hartford’s motion, the court in Hartford’s case was aware of that ruling and distinguished USF&G’s case as involving a consent judgment instead of a settlement agreement.

 US Fidelity Ins & Guaranty Co v Michigan Catastrophic Claims Ass’n, 274 Mich App 184, 192; 731 NW2d 481 (2007).

 Id. at 197.

 Id.

 Judge White concurred and, noting that there were no allegations of bad faith by the insurers, added:
Under the statutory framework, the determination of reasonableness is to be made by the insurer, or the judicial system after litigation.... The statute does not contemplate that the MCCA will become a party to the insurance contract, or possible litigation, between the insured and the insurer, with a voice regarding whether a lesser or greater sum is reasonable under MCL 500.3107. Nor does it contemplate that the MCCA will act as a de facto regulatory body, determining what amounts are reasonable for which services. [Id. at 205-206 (WHITE, J., concurring).]

 US Fidelity Ins & Guaranty Co v Michigan Catastrophic Claims Ass’n, 481 Mich 862 (2008). The order additionally asked the parties to consider:
(1) Whether factors to consider in determining whether the MCCA is precluded from questioning the reasonableness of the *422 reimbursement claims in these cases include the MCCA’s failure to exercise to their full extent, before entry of the consent judgment in Docket No. 133466 and the settlement agreement in Docket No. 133468, its powers under MCL 500.3104(7)(b) and (g) to:
(a) require notice of claims likely to involve the MCCA;
(b) require notice of subsequent developments likely to materially affect the MCCA’s interests;
(c) establish claims procedures and practices for MCCA members; and,
(d) if the MCCA considers a member’s claims procedures and practices inadequate, to undertake to adjust or assist in adjusting the claim, at the member’s expense, so as to ensure that member claims submitted to the MCCA for reimbursement are, in fact, reasonable; and
(2) Whether, like the terms of declaratory judgments pertaining to PIP benefits payable in the future, the terms of consent judgments and settlement agreements pertaining to PIP benefits that embody terms that prove over time to call for reimbursement at a rate higher than the actual cost incurred are subject to:
(a) reduction based on the requirement that an expense must be actually incurred before a no-fault insurer is obliged to pay it; and
(b) redetermination from time to time of the amounts properly allowable, based on a change in facts or circumstances after entry of the consent judgment or settlement agreement. Cf. Manley v DAIIE, 425 Mich 140, 157 (1986); Proudfoot v State Farm Mut Ins Co, 469 Mich 476, 483-484 (2003).

 Lash v Traverse City, 479 Mich 180, 186; 735 NW2d 628 (2007).

 Id.

 Id. at 187.

 Sun Valley Foods Co v Ward, 460 Mich 230, 237; 596 NW2d 119 (1999) (citation omitted), quoting Bailey v United States, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995).

 In re Certified Question (Preferred Risk Mut Ins Co v Michigan Catastrophic Claims Ass’n), 433 Mich 710, 714-715; 449 NW2d 660 (1989). This Court further explained the policy underlying the statute:
The Legislature recognized that while such claims might he rare, they are also unpredictable, and equally as likely to strike a small or medium-sized insurer as they are a large insurer. The obvious problem is that the small or medium-sized companies have substantially fewer cars over which to spread the costs of potential losses, which means that the costs of providing unlimited medical and other benefits is higher per car for such companies, putting them at a competitive disadvantage in the state’s insurance market. In addition to this competitive disadvantage, the Legislature considered the practical “business difficulties” confronting all insurers as a result of such possible catastrophic claims, such as the difficulty in determining the amount of reserves to keep on hand.
It was thought that the creation of such an association of insurers would alleviate the competitive inequity of these catastrophic claims by spreading their cost throughout the industry, and also increase the statistical basis for prediction of the overall *425 cost of such claims, making the management of these liabilities easier. See House Legislative Analysis, SB 306, March 13,1978. [In re Certified Question, supra at 714 n 2.]

 The threshold loss amount is determined by the date the policy was issued or renewed. The subject policies of these appeals were “issued or renewed before July 1, 2002.” MCL 500.3104(2)(a). Thus, the relevant threshold loss amount for these appeals is $250,000. Id. The current threshold is $440,000. MCL 500.3104(2)(h).

 MCL 500.3104(25)(c).

 See MCL 500.3104(2)(a)-(k).

 In re Certified Question, supra at 723.

 MCL 500.3163(1) obligated the plaintiff to provide Michigan no-fault benefits.

 The MCCA defined “resident” as “all owners or registrants of motor vehicles required to be registered [in Michigan] ... .” In re Certified Question, supra at 719.

 Id. This Court, determining that the statute controlled over the MCCA’s definition of “resident,” held that the statute nonetheless contained a parallel provision to the MCCA’s definition of “resident.” As we will discuss, this Court explained that “personal protection insurance coverages,” as used in MCL 500.3104(2), refers to policies providing “the compulsory security requirements of [MCL 500.3101(1)],” i.e., “ ‘residents,’ in the language of the [MCCA’s] plan of operation.” In re Certified Question, supra at 723.

 See also Liberty Mut Ins Co v Michigan Catastrophic Claims Ass’n, 248 Mich App 35, 42; 638 NW2d 155 (2001) (holding that the MCCA was not obligated to indemnify a claim under a California automobile insurance policy that was reformed into a Michigan no-fault automobile insurance policy five years after the subject accident, and stating that “the MCCA can refuse to indemnify claims paid under MCL 500.3163”); Farmers Ins Exch v South Lyon Community Schools, 237 Mich App 235, 238 n 1; 602 NW2d 588 (1999) (“[T]he MCCA is not obligated to indemnify its member insurers for amounts the insurers are not obligated to pay under their no-fault policies.”); Transamerica Ins Group v Michigan Catastrophic Claims Ass’n, 202 Mich App 514; 509 NW2d 540 (1993) (holding that the MCCA was not obligated to indemnify a claim submitted by two insurers seeking to aggregate their shared losses to exceed the $250,000 threshold); J C Penney Cas Ins Co v Michigan Catastrophic Claims Ass’n, 177 Mich App 538 (1989), aff'd 434 Mich 901 (1990) (holding that the plaintiff insurer was not entitled to reimbursement from the MCCA).

 In re Certified Question, supra at 723. Plaintiffs argue that this statement is obiter dictum. “ ‘Obiter dictum’ is defined as ‘[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential....’” People v Williams, 475 Mich 245, 251 n 1; 716 NW2d 208 (2006), quoting Black’s Law Dictionary (7th ed). As stated, In re Certified Question held that § 3104(2) only applied to “a policy which was written in this state to provide the security required by § 3101(1) of the no-fault act.” In re Certified Question, supra at 719. The Court’s interpretation of “personal protection insurance coverages” was not unnecessary. Rather, it directly reflects the holding.
The dissent cites In re Certified Question for several propositions of law, but distinguishes its holding. Despite conceding that § 3104(2) imposes three requirements that a member insurer’s claim must meet, the dissent nonsensically asserts that the MCCA is without authority to determine whether a claim complies with § 3104(2). Post at 448-450 n 15. The dissent’s position is fallacious on its face; it would rob any meaning from what the dissent concedes are requirements for indemnification. Moreover, the dissent attempts to limit the holding in In re Certified Question to noncompliance with § 3104(2) that is “objectively clear.” Post at 449 n 15. Nothing in In re Certified Question suggests such a limitation. Rather, In re Certified Question plainly held that the MCCA is not required to indemnify a claim that does not meet the requirements of § 3104(2); we do the same today.

 MCL 500.3105(1) provides: “Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.”

 See Cruz v State Farm Mut Auto Ins Co, 466 Mich 588, 594; 648 NW2d 591 (2002) (“[W]here contract language is neither ambiguous, nor contrary to the no-fault statute, the will of the parties, as reflected in their agreement, is to be carried out, and thus the contract is enforced as written.”).

 Of course, such practice may be subject to the MCCA’s “takeover” authority under MCL 500.3104(7)(g), which provides:
(7) The association shall do all of the following on behalf of the members of the association:
(g) Establish procedures for reviewing claims procedures and practices of members of the association. If the claims procedures or practices of a member are considered inadequate to properly service the liabilities of the association, the association may undertake or may contract with another person, including another member, to adjust or assist in the adjustment of claims for the member on claims that create a potential liability to the association and may charge the cost of the adjustment to the member.
The dissent asserts that § 3104(7)(g) authorizes the MCCA “to adjust only ‘procedures and practices’ of the member that produce an unreasonable payment amount; the power does not include the power to adjust the amount.” Post at 455-456. Section 3104(7)(g) permits the MCCA “to adjust or assist in the adjustment of claims for the member on claims that create a potential liability to the association____” (Emphasis added.) As used in § 3104(7)(g), “adjust” means “[t]o settle or arrange; to free from differences or discrepancies. To bring to satisfactory state so that parties *431 are agreed, as to adjust amount of loss by fire or controversy regarding property or estate... . Determination of amount to be paid to insured by insurer to cover loss or damage sustained.” Black’s Law Dictionary (5th ed); see also Random House Webster’s College Dictionary (1997) (“to determine the amount to be paid in settlement of (an insurance claim)”). Contrary to the dissent’s assertion, the MCCA’s authority is not limited to adjusting the member insurer’s “procedures and practices”; the MCCA is authorized to negotiate directly with the insured to reach a settlement of the claim and, under those circumstances, the MCCA is “adjusting” the amount. When it “adjusts” a claim, the MCCA is seeking to reduce its liability by preventing the member insurer from accepting excess liability. Invariably any adjustment will depend on the terms of the policy.
The instant cases are distinct from the norm, however. Here, plaintiffs agreed to certain payments in a consent judgment and a settlement agreement and remain bound by those agreements regardless whether the MCCA indemnifies the entire claim or invokes its “takeover” authority. Although member insurers are not “obligated” to pay their insureds until the claimed expense is actually incurred, see Proudfoot v State Farm Mut Ins Co, 469 Mich 476, 484 (2003), any opportunity to “adjust” Migdal’s and Allen’s claims and thereby reduce plaintiffs’ liability before they become obligated is severely limited by the terms of their agreements.

 The dissent contends that the consent judgment and settlement agreement became “part of the insurer’s coverage.” Post at 448. The dissent’s attempt to bootstrap the terms of the consent judgment and settlement agreement into the insureds’ coverages is inconsistent with the dissent’s own definition of “coverage,” and is unpersuasive. We agree with the dissent that “ ‘coverage’ refers to protection afforded by an insurance polity or the sum of risks assumed by an insurance policy.” Jarrad v Integon Nat’l Ins Co, 472 Mich 207, 217; 696 NW2d 621 (2005), citing LeBlanc v State Farm Mut Auto Ins Co, 410 Mich 173, 204; 301 NW2d 775 (1981). Thus, the terms of the policy control the standard for the MCCA’s review.

 Each party advances a policy argument in its favor. The MCCA argues that the no-fault system is intended keep automobile insurance costs affordable. See Cameron v Auto Club Ins Ass’n, 476 Mich 55, 71-72; 718 NW2d 784 (2006) (“[A] dominant legislative purpose permeating throughout the no-fault act is to ensure that this mandatory coverage is affordable.”). The premium the MCCA charges a member insurer is passed on to its insureds. See In re Certified Question, supra at 729; MCL 500.3104(22). As a result, the MCCA argues, if the MCCA must incur significant additional liability for “unreasonable charges,” no-fault insurance costs will rise dramatically. In response, plaintiffs argue that no-fault insurance was intended to provide assured, adequate, and prompt payment. See Shavers v Attorney General, 402 Mich 554, 579-580; 267 NW2d 72 (1978) (“The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses.”); MCL 500.3142. Plaintiffs argue that if the MCCA may reject member insurer claims on the basis of the *433 reasonableness of the charges, member insurers will need to seek assurances that the MCCA will reimburse certain payments before making them, thus delaying payment.
Both policy arguments are compelling. It is not for this Court, however, to favor one policy objective over the other. “[P]olicy decisions are properly left for the people’s elected representatives in the Legislature, not the judiciary. The Legislature, unlike the judiciary, is institutionally equipped to assess the numerous trade-offs associated with a particular policy choice.” Devillers v Auto Club Ins Ass’n, 473 Mich 562, 589; 702 NW2d 539 (2005). The Legislature has made its policy choice. Given the text of MCL 500.3104(2), we believe that the Legislature intended to allow the MCCA to reject claims for charges in excess of the member’s policy coverage. Thus, the parties’ competing policy arguments are misplaced because this Court is without authority to replace the Legislature’s choice with our own.

 MCL 500.3104(8)(g).

 Id.

 MCL 500.3104(2).

 In re Certified Question, supra at 723.